UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

M.C., BY AND THROUGH HIS NEXT
FRIEND, PATRICIA THURMAN; J.H.,
BY AND THROUGH HIS NEXT FRIENDS,
BETTY AND JASON HUBBARD;
AND D.F., BY AND THROUGH HIS NEXT
FRIENDS, HALICIA FRANCIS AND
MICHAEL FRANCIS                                              PLAINTIFFS


VS.                                   CIVIL ACTION NO. 3:10CV653TSL-MTP


MARLON DORSEY, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY; BRANDON SANDERS,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
DR. FREDDRICK MURRAY, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY; DR. GRETA TERRY,
IN HER INDIVIDUAL AND OFFICIAL CAPACITY;
ANNA JACKSON, IN HER INDIVIDUAL AND
OFFICIAL CAPACITY; AND JACKSON PUBLIC
SCHOOL DISTRICT                                             DEFENDANTS


                CORRECTED MEMORANDUM OPINION AND ORDER

        Over a two-week period in October 2010, plaintiffs J.H., D.F.

and M.C., then students at Murrah High School and members of

Murrah's boys' varsity basketball team, were paddled or whipped

with a weightlifting belt during basketball practices by then head

basketball coach Marlon Dorsey.  On October 26, 2010, after a

parent witnessed an incident of his son being spanked by Dorsey

and brought Dorsey's actions to the attention of Murrah Principal

Freddrick Murray, and in turn, to Dr. Greta Terry, Assistant

Superintendent of High Schools for the Jackson Public School

District (JPS), Dorsey was immediately instructed to stop spanking

the students and, following a short investigation which confirmed the spanking allegation, Dorsey was notified of his termination based on his violation of JPS policy, which prohibited corporal punishment. Ultimately, Dorsey was not terminated, but was suspended without pay for thirty days.

On November 10, 2010, plaintiffs filed the present action against Dorsey, Principal Murray, Dr. Terry, Assistant Coach Brandon Sanders and JPS Athletic Director Anna Jackson, all in their individual and official capacities, and against JPS, asserting federal claims under 42 U.S.C. § 1983 for alleged violation of plaintiffs' substantive and procedural due process and equal protection rights under the Fourteenth Amendment. In addition, plaintiffs asserted state law claims against various defendants for intentional infliction of emotional distress, false light invasion of privacy and assault and battery. The case is presently before the court on motions by defendants to dismiss, or alternatively, for summary judgment,[1] and a separate motion by

_____

[1]     One motion was filed by defendants JPS and defendants Dorsey, Murray, Terry and Davis, in their individual and official capacities, and defendant Sanders, in his official capacity, titled "Motion to Dismiss on Basis of Qualified Immunity from Federal Claims and Individual Immunity from State Law Claims, or Alternatively, for Summary Judgment."  Sanders, who has his own counsel, filed in his individual capacity a joinder in his co-defendants' motion to dismiss.

The court notes that despite the title of their motion, defendants do not limit their request for dismissal to qualified immunity grounds but rather they seek dismissal for failure to state a claim and for summary judgment on grounds unrelated to

plaintiffs to consolidate their separately filed action, <u>M.C., by</u> <u>and through his next friend, Patricia Thurman, et al. v. Dr.</u> <u>Lonnie Edwards, et al.</u>, Civil Action No. 3:12CV134WHB-LRA, with this action.  Defendants have not opposed plaintiffs' motion to consolidate and that motion will therefore be granted.  Plaintiffs have responded in opposition to defendants' motion to dismiss or, alternatively for summary judgment, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that with the exception of plaintiffs' equal protection claim against Coach Dorsey, in his individual and official capacities, the motion to dismiss, or for summary judgment, should be granted.  The court further concludes that in view of the consolidation of cases, plaintiffs' arguments for dismissal of the state law claims are moot in part and should otherwise be deferred until such time as any post-consolidation dispositive motion is filed.

<u>FEDERAL CLAIMS:</u>

To state a valid cause of action under § 1983, plaintiffs must (1) allege a violation of a right secured by the Constitution or the laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  <u>Moore v. Willis Indep. Sch. Dist.</u>, 233 F.3d 871,

---

qualified immunity.

874 (5th Cir. 2000), cert. denied, 498 U.S. 908, 111 S. Ct. 279, 112 L. Ed. 2d 233 (1990).

§ 1983 Due Process

Plaintiffs allege that the whippings administered by Dorsey violated their substantive due process rights under the Fourteenth Amendment. They assert that Dorsey is liable because he administered the licks; that Sanders is liable because he "fetched" the belt on some occasions and because on all occasions, he stood by and allowed the whippings to occur and did not intervene or take other action to stop the whippings; that the remaining supervisory defendants are liable on a failure to train theory; and that JPS (including all defendants in their official capacities) is liable because it "allowed an environment to fester within its athletics departments where athletes had to submit to physical and verbal abuse in order to participate in sports."

There is no dispute that Dorsey paddled members of the boys' basketball team, though how often and why it occurred is the subject of disagreement. Plaintiffs D.F. and J.H. recalled four practices in which they received licks, and M.C. claimed that he was whipped daily with the belt from October 19th through October 26th. Each plaintiff testified that Dorsey used the belt to paddle or whip them when he thought they had failed to run plays correctly or otherwise messed up in practice. Plaintiffs allege that they received these licks even though they had not engaged in

4

any misconduct, and that the licks Dorsey administered served no legitimate purpose whatsoever and were inspired by a malicious and sadistic purpose to cause harm.

Defendants acknowledge that Dorsey paddled or spanked each of the plaintiffs (as well as other members of the team) with a weightlifting belt during some number of basketball practices over a two- to three-week period in October 2010, giving each player three licks with the belt every time he whipped them.  They contend that he did so in order to maintain discipline.  Dorsey testified that the first instance of paddling players occurred when J.H. and a couple of other players were playing around in the weight room and almost dropped a weight on another player's chest. He stated that he got the belt and "used it off of instinct" to paddle the boys for almost causing serious injury to another player.  Dorsey testified that he could not specifically remember the next time or any of the succeeding times he used the belt to spank players; but he maintained in his testimony that he used it only for disciplinary reasons.  According to Dorsey, he paddled D.F. several times for his on-the-floor behavior, and specifically for using "profanity toward the players and coaches [and] disrespectfulness toward the players and the coaches[.]"  He testified that he also paddled M.C. and J.H. twice for their "on-the-floor behavior," including using profanity and being disrespectful toward teammates.  Dorsey denied that he whipped

players for missing plays or messing up in practice or for any misbehavior (or perceived misbehavior) off the basketball court.

In their motion, defendants argue that plaintiffs cannot state a cognizable claim for violation of plaintiffs' substantive due process rights based on excessive corporal punishment since state law affords them an adequate post-corporal punishment remedy.  The Fifth Circuit "ha[s] held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage." Moore, 233 F.3d at 874 (citing Fee v. Herndon, 900 F.2d 804, 807 (5th Cir. 1999)); Fee, 900 F.2d at 807 (describing corporal punishment as a "deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning[,]" but holding that "[e]ducators in states that proscribe student mistreatment and provide a remedy 'do not, by definition, act "arbitrarily," a necessary predicate for substantive due process relief'"); see also Serafin v. School of Excellence in Educ., 252 Fed. Appx. 684, 685-686, 2007 WL 3226296, 1 (5th Cir. 2007) (reiterating that "[i]t is well settled in this Circuit that corporal punishment of public school students is only a deprivation of substantive due process rights 'when it is

arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning[,]," and that "[a]s a matter of law, punishment is not arbitrary so long as the state affords local remedies for the alleged offensive conduct") (citing Fee and Moore); Flores v. School Board of DeSoto Parish, 116 Fed. Appx. 504, 509 (5th Cir. 2004) (stating that "[t]his circuit does not permit public school students to bring claims for excessive corporal punishment as substantive due process violations under § 1983 if the State provides an adequate remedy"). Thus, the Fifth Circuit affirmed dismissal of the plaintiffs' substantive due process claims in Fee, Moore and Serafin because it concluded that Texas law afforded adequate post-punishment civil or criminal remedies for excessive corporal punishment, and in Flores, because it determined that Louisiana law afforded students an adequate post-punishment remedy.

Likewise, in Scott v. Smith, the Fifth Circuit affirmed the dismissal of the plaintiff's due process claims because it "agree[d] with the district court that Mississippi provides adequate state law remedies such that neither substantive nor procedural due process rights are implicated" in a claim of excessive corporal punishment. 214 F.3d 1349, 2000 WL 633583 (5th Cir. 2000) (unpublished opinion). See also Bell v. Western Line School Dist., Civil Action No. 4:07CV004-P-B, 2007 WL 2302143, 2-4 (N.D. Miss. Aug. 7, 2007) (concluding that "Mississippi's

state-law remedies are adequate given that an aggrieved parent may sue the teacher and the school district for excessive corporal punishment in state court pursuant to [Miss. Code Ann.] §§ 37-11-57 and 11-46-9(1)(x)"); Newcomb ex rel. Newcomb v. Okolona Mun. Separate School Dist., 1999 WL 33537139, 2-3 (N.D. Miss. 1999) (holding as a matter of law that paddling which plaintiff received did not violate his (procedural or) substantive due process rights because "Mississippi proscribes and remedies mistreatment of students by educators"); Miss. Code. Ann. § 37-11-57(1) (providing that "[e]xcept in the case of excessive force or cruel and unusual punishment[,]" a teacher, assistant teacher, principal or assistant principal acting within the course and scope of employment "shall not be liable for any action carried out in conformity with state or federal law or rules or regulations of the State Board of Education or the local school board regarding the control [or] discipline" of students); Miss. Code Ann. § 37-11-57(2) (providing that corporal punishment must be administered in a reasonable manner and a teacher will not be held liable for civil damages arising from the administration of corporal punishment "unless the court determines that the teacher ... acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety"); Miss. Code Ann. § 11-46-9(1)(x) (providing governmental entity and employees exemption from liability "[a]rising out of

8

the administration of corporal punishment or the taking of any action to maintain control and discipline of students, as defined in Section 37-11-57, ... unless the teacher, assistant teacher, principal or assistant principal acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety").[2]

In response to defendants' motion, plaintiffs do not take issue with defendants' contention that plaintiffs have an adequate remedy under state law. On the contrary, plaintiffs explicitly argue state law, particularly § 37-11-57(1) and (2), does *not* shield defendants from liability for excessive corporal punishment; and consistent with this position, plaintiffs have brought civil claims against defendants under state law for assault and battery and intentional infliction of emotional distress to recover damages for the physical and emotional injuries allegedly inflicted as a result of the whippings they received from Dorsey.[3] Plaintiffs do take issue with defendants'

---

[2] In addition to their claim for alleged violation of their substantive due process rights, plaintiffs also purport to assert a claim for violation of their procedural due process rights based on defendants' failure to notify them that they could be subject to corporal punishment for failing to run plays correctly. However, just as with their substantive due process claim for excessive corporal punishment, the availability of an adequate post-punishment remedy under state law is fatal to plaintiffs' putative procedural due process claim. See Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 875 (5th Cir. 2000), cert. denied, 498 U.S. 908, 111 S. Ct. 279, 112 L. Ed.2d 233 (1990).

[3] Criminal proceedings were instituted as well, but were dismissed following a probable cause hearing in which the Hinds

9

characterization of Dorsey's actions as corporal punishment. To the point, plaintiffs take the position that Dorsey's actions are not properly viewed as corporal punishment since there was no arguable pedagogical objective, and that their substantive due process claim is for violation of their Fourteenth Amendment right to be free from state-occasioned damage to bodily integrity unrelated to corporal punishment.

In Campbell v. McAlister, 162 F.3d 94, 1998 WL 770706, 2 (5th Cir. 1998) (unpublished opinion), the court recognized a distinction between injuries alleged to have resulted from excessive corporal punishment and injuries resulting from other violations of a student's right to bodily integrity. The court observed that it had consistently applied a substantive due process analysis to claims of excessive force "in the context of corporal punishment at public schools" and that it had applied this same analysis "in the school context to the right to be free from 'state-occasioned damage to a person's bodily integrity.'" 1998 WL 770706, at 5. See also Moore, 233 F.3d at 875 (stating, "By now, every school teacher and coach must know that inflicting pain on a student through, *inter alia*, unreasonably excessive exercise, violates that student's constitutional right to bodily integrity by posing a risk of significant injury. This right is

County Circuit Court found the evidence did not establish criminal intent on the part of Coach Dorsey and dismissed the affidavits for an arrest warrant.

not implicated, however, when, as in this case, the conduct complained of is corporal punishment-even unreasonably excessive corporal punishment-intended as a disciplinary measure."). However, the court noted that while "[i]njuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause *if the forum state affords adequate post-punishment civil or criminal remedies* for the student to vindicate legal transgressions[,]" id. (quoting Fee, 900 F.2d at 808), "[i]f ... an excessive or abusive use of force is wholly unrelated to legitimate school interests, it is quite likely that no post-deprivation remedy would meet the requirements of due process," Campbell, 1998 WL 770706, at 5.

"[F]airly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose." Flores, 116 Fed. Appx. at 511, 2004 WL 2604225, at 4. Defendants herein contend that Dorsey paddled plaintiffs because of their disrespectful behavior toward the coaches and other students/ players, and that since the licks administered by Dorsey were intended as a disciplinary measure, then plaintiffs' substantive due process claim is properly analyzed as one for excessive corporal punishment. Plaintiffs, on the other hand, deny that

11

Dorsey had any disciplinary purpose for whipping them. They insist that Dorsey did not paddle them for being disrespectful of others or for violating any school rules, and that instead, he paddled them because he perceived them as messing up in practice and failing to run plays correctly. The whippings, they argue, was a coaching technique, wholly unrelated to any legitimate school interest and imply that consequently, the availability of state remedies is immaterial to their substantive due process claim.

There is obviously a disputed issue of fact as to the reason for the licks administered by Dorsey. The court must resolve that dispute in favor of plaintiffs, as the nonmovants. Nevertheless, in the court's opinion, plaintiffs' substantive due process claim still fails as a matter of law. The Fifth Circuit has held that "[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981). However, a substantive due process violation requires more than an ordinary tort to be actionable, see Chestang v. Alcorn State Univ., 820 F. Supp. 2d 772, 779 (S.D. Miss. 2011) (citing Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)); there is a violation only if the challenged conduct "can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense," id.

(quoting <u>County of Sacremento v. Lewis</u>, 523 U.S. 833, 847, 118 S.

Ct. 1708, 140 L. Ed. 2d 1043 (1998)).  Recently, in <u>Doe ex rel.</u>

<u>Magee v. Covington County School District ex rel. Keys</u>, the Fifth

Circuit described this standard, stating,

> Conduct sufficient to shock the conscience for
> substantive due process purposes has been described in
> several different ways.  It has been described as
> conduct that "violates the decencies of civilized
> conduct"; conduct that is "so brutal and offensive that
> it [does] not comport with traditional ideas of fair
> play and decency"; conduct that "interferes with rights
> implicit in the concept of ordered liberty"; and conduct
> that "is so egregious, so outrageous, that it may fairly
> be said to shock the contemporary conscience."  <u>Lewis</u>,
> 523 U.S. at 846–47 & n.8, 118 S. Ct. 1708 (citation and
> internal quotation marks omitted).  Many cases that have
> applied the standard have involved the use of extreme
> force by police officers or other state actors.  <u>See</u>
> <u>Checki v. Webb</u>, 785 F.2d 534, 535–36, 538 (5th Cir.
> 1986) (state trooper intentionally used his vehicle to
> terrorize motorist and passenger); <u>Shillingford v.</u>
> <u>Holmes</u>, 634 F.2d 263, 264–65 (5th Cir. 1981) (police
> officer intentionally struck tourist because he was
> photographing the police officer and fellow officers
> apprehending a boy on the street during a Mardi Gras
> parade), <u>abrogated on other grounds by</u> <u>Valencia v.</u>
> <u>Wiggins</u>, 981 F.2d 1440 (5th Cir. 1993); <u>see</u> <u>also</u> <u>Neal ex</u>
> <u>rel. Neal v. Fulton Cnty. Bd. of Educ.</u>, 229 F.3d 1069,
> 1071, 1075–76 (11th Cir. 2000) (student blinded in one
> eye when a coach intentionally hit him in the head with
> a metal weight); <u>Rogers v. City of Little Rock, Ark.</u>,
> 152 F.3d 790, 797 (8th Cir. 1998) (rape of a woman at
> her house by a police officer after he stopped her for a
> traffic violation); <u>Hemphill v. Schott</u>, 141 F.3d 412,
> 418–19 (2d Cir. 1998) (police officer provided
> assistance to a third party in shooting the plaintiff).
> As one court has recently summarized, "[t]he burden to
> show state conduct that shocks the conscience is
> extremely high, requiring stunning evidence of
> arbitrariness and caprice that extends beyond mere
> violations of state law, even violations resulting from
> bad faith to something more egregious and more extreme."
> <u>J.R. v. Gloria</u>, 593 F.3d 73, 80 (1st Cir. 2010)
> (citation and internal quotation marks omitted).

675 F.3d 849, 867-868, (5th Cir. 2012).  See also Doe v. Taylor.
Indep. Sch. Dist., 15 F.3d 443, 451 (5th Cir. 1994) (sexual
fondling and statutory rape of fifteen-year old girl by teacher
constituted violation of student's bodily integrity); Jefferson v.
Ysleta Indep. Sch. Dist., 817 F.2d 303, 305 (5th Cir. 1987)
(teacher's lashing of eight-year old student to chair for two days
and denying access to bathroom for almost two days violated
student's substantive due process right to bodily integrity).

In the court's opinion, accepting plaintiffs' version of the
facts, Dorsey's administering licks to high school basketball
players, even repeatedly and even using a weightlifting belt
rather than a paddle, as a coaching technique simply does not meet
the extremely high standard required to state a claim for a
substantive due process violation.  Accordingly, plaintiffs' claim
for violation of their substantive due process rights against all
defendants, including their failure to train claim against Dr.
Murray, Dr. Terry, Davis and JPS relating to the due process
violation, will be dismissed.[4]

---

[4]     A failure to train theory "still requires the violation
of an underlying constitutional right, which is lacking here."
Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys,
675 F.3d 849, 869 (5th Cir. 2012) (citing, inter alia, Jenkins v.
Bartlett, 487 F.3d 482, 492 (7th Cir. 2007) ("[T]here can be no
liability under Monell for failure to train when there is no
violation of the plaintiff's constitutional rights.")).

<u>§ 1983 Equal Protection</u>

Plaintiffs allege that their Fourteenth Amendment right to equal protection was violated because, even if they committed the infractions claimed by Dorsey, they were disciplined differently than similarly situated students who committed similar infractions. To prevail on their equal protection claim, plaintiffs must show that they were intentionally treated differently from other students similarly situated and, because no fundamental right is involved, that there is no rational basis for that difference in their treatment. See <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000); <u>Cunningham v. Beavers</u>, 858 F. 2d 269, 272-73 (stating that "[t]he Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike").

Defendants argue that plaintiffs cannot establish an equal protection violation because they cannot show either that they were treated differently from similarly situated students or that Dorsey lacked a rational basis for any difference in treatment. Plaintiffs, however, point out that whereas Dorsey whipped them for alleged misconduct, and specifically for using profanity, he did not whip the students in his physical education classes who engaged in the same misconduct and instead, he wrote up those students and sent them to the principal's office.[5]

---

[5]    The court rejects defendants' apparent suggestion that the only students to whom plaintiffs were similarly situated were

Defendants argue that Dorsey had a rational basis for spanking members of the basketball team, namely, to maintain discipline. Yet they do not claim that there was a greater or different need to maintain discipline on the basketball court than in the classroom. Accordingly, the court cannot conclude that plaintiffs have not stated an equal protection claim against Dorsey, or that they cannot prove an equal protection violation by Dorsey.

Having said that, plaintiffs have not alleged that any putative equal protection violation resulted from an official policy of JPS, or put another way, that any policy of custom of JPS was a moving force behind the alleged violation. See Polk County v. Dodson, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (holding that "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body") (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). In fact, plaintiffs expressly allege that Dorsey whipped them in violation of JPS policy.[6] Moreover, there is no proof

their teammates on the basketball team, and thus also rejects their argument that plaintiffs cannot establish an equal protection violation since all basketball players received the same discipline for the same alleged infractions.

[6]    The court notes, too, that the proof belies the existence of any policy, practice or custom of violating basketball players' equal protection rights. The only instances of any coach paddling basketball players (or any other athletes for that matter) are those that are the subject of plaintiffs'

that any other defendant personally participated in the alleged equal protection violation, and the failure to train allegations logically correspond only to plaintiffs' substantive due process claim, not their equal protection claim.

§ 1983 Invasion of Privacy

On October 31, 2010, after Dorsey was given notice that he would be terminated for spanking the players on the team in violation of JPS policy prohibiting corporal punishment, Dorsey released a press statement, stating,

> [T]oday, some of [sic] students have lost pride in their school and in their [sic] selves.  Students are disrespecting teachers, administrators and other students by stealing cell phones, leaving off campus without permission, disrupting classroom teaching time, late for class and not following dress codes by wearing the pants on their butts and house shoes to school and on-court behavior.  I took it upon myself to save these young men from the destruction of self and what society has accepted and become silent to the issues our students are facing on a daily basis.  My actions were to prevent the tragedy that happened to three of our basketball players 3 years ago at Murrah High School.

Plaintiffs allege that Dorsey's statements violated their Fourteenth Amendment right to privacy.

The substantive due process clause has been held to protect two different privacy rights:  autonomy and confidentiality.

> The autonomy branch involves "'the interest in independence in making certain kinds of important decisions[,]' such as those relating to marriage, procreation, and education."  <u>Zaffuto v. City of</u>

---

complaint herein.  When the incidents were brought to the attention of JPS administrators, the paddlings were immediately halted.

> Hammond, 308 F.3d 485, 489 n.4 (5th Cir. 2002) (quoting
> Whalen v. Roe, 429 U.S. 589, 599–600 (1977)). The
> branch implicated in this case, however, is the
> "confidentiality branch" which refers to the Fourteenth
> Amendment's protection of the "individual interest in
> avoiding disclosure of personal matters." Id. (citing
> Whalen, 429 U.S. at 599). This also includes "the right
> to be free from the government disclosing private facts
> about its citizens and from the government inquiring
> into matters in which it does not have a legitimate and
> proper concern." Ramie v. City of Hedwig Village, Tex.,
> 765 F.2d 490, 492 (5th Cir. 1985) (citing Whalen, 429
> U.S. at 599–600).

Wyatt v. Kilgore Indep. Sch. Dist., Civil Action No. 6:10-cv-674, 2011 WL 6016467, 4 (E.D. Tex. Nov. 30, 2011). "There is no Fifth Circuit authority on what types of disclosures are personal enough to trigger the protection of the confidentiality branch[,]" and the court has acknowledged that "the contours of the confidentiality branch are murky[,]" id. (citing Scheetz v. The Morning Call, Inc., 946 F.2d 202, 206 (3rd Cir. 1991)). However, the court has recognized "[t]he constitutional right to privacy is generally limited to only the most intimate aspects of human affairs." Id. (citing Wade v. Goodwin, 843 F.2d 1150, 1153 (8th Cir. 1988)).

Plaintiffs reason that since the Family Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232, prohibits the disclosure of student educational records or personally identifiable information contained therein without the consent of the student or his parents, and since in his press release, Dorsey disclosed information from plaintiffs' educational records/disciplinary

18

files, then he disclosed private matters in violation of plaintiffs' due process right. However, the evidence does not support plaintiffs' assertion that the matters referenced in Dorsey's press release were derived from plaintiffs' educational/disciplinary records. For example, there is nothing in any of plaintiffs' educational/disciplinary records about them disrespecting teachers, administrators or other students; about any of them stealing cell phones; about leaving campus without permission; disrupting classroom teaching time; or about violating the dress code by wearing house shoes or sagging pants. In fact, plaintiffs deny that they even engaged in these behaviors. And while there are entries in two of the plaintiffs' records reflecting they were written up for being late for class, in the court's opinion, the fact that they may have been late for class, notwithstanding being noted in their school records, is neither private (since their tardiness would have been witnessed by any number of teachers, administrators and students) nor the kind of intimate matter with which the due process clause is concerned. Accordingly, plaintiffs' claim for violation of their substantive due process right to privacy will be dismissed.

STATE LAW CLAIMS

Plaintiffs have asserted a claim against Dorsey for assault and battery; against Dorsey and JPS for false light invasion of privacy; and against Dorsey, Sanders, Murray and JPS for

intentional infliction of emotional distress. Defendants have moved to dismiss these claims on various grounds, as follows.

First, defendants argue that plaintiffs failed to file a Notice of Claim ninety days prior to suit, as required by the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-11. Defendants are correct that this is a mandatory requirement and that for this reason, all plaintiffs' claims that are governed by the MTCA are due to be dismissed. However, after filing this action, plaintiffs gave the required ninety days' notice and thereafter filed a second suit in state court asserting these same claims. Following removal of that case to this court, plaintiffs have moved to consolidate that case with this one. As defendants have not opposed that motion, the court will grant the motion to consolidate, which renders the request for dismissal on the basis of failure to comply with the MTCA notice provision moot.

Defendants have made additional arguments for dismissal of various state law claims. However, in light of the consolidation of this suit and the second-filed suit, which asserts additional state law claims against these and one other defendant, and the likely fact that a more comprehensive dispositive motion will be filed addressing the claims in the case, as now configured, the court declines to address these arguments at this time.

CONCLUSION

Based on the foregoing, it is ordered that defendants' motion to dismiss or, alternatively, for summary judgment, is granted in part and denied in part, as set forth herein.  It is further ordered that plaintiffs' motion to consolidate is granted and that Civil Action No. No. 3:12CV134WHB−LRA is consolidated with this cause for all purposes.

SO ORDERED this 16th day of November, 2012.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE